### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUKHAMMADJON MAKHMUDOV, | ) ) ) |
| Petitioner, | ) ) |
| v. | )     Case No. CIV-25-1526-G |
| | ) |
| PAMELA BONDI, et al., | ) ) |
| Respondents. | ) |

### <u>NUNC PRO TUNC REPORT AND RECOMMENDATION</u>

Petitioner Mukhammadjon Makhmudov, a noncitizen,[1] seeks a writ of

habeas corpus under 28 U.S.C. § 2241. Doc. 7.[2] United States District Judge

Charles B. Goodwin referred the case to the undersigned Magistrate Judge for

initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 5.[3] Petitioner also

filed an amended application for a temporary restraining order (TRO) seeking

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]    The amended petition, Doc. 7, supersedes the original petition, Doc. 1, as the operative petition.

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

injunctive relief. Doc. 8.[4] The Court directed Respondents[5] to respond to Petitioner's habeas petition and TRO application for a decision on the merits. Doc. 9. Respondents responded, Doc. 11, and Petitioner replied, Doc. 12. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition, in part, and his TRO application, and order his immediate release.

## I.    Factual background and procedural history.

---

[4]    "A TRO preserves the status quo and prevents immediate and irreparable harm until the court has an opportunity to pass upon the merits of a demand for preliminary injunction." *Flying Cross Check, L.L.C. v. Central Hockey League, Inc.,* 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001); *Resol. Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). "The essence of a [TRO] is its brevity, its ex parte character, and (related to the second element) its informality*." Flying Cross Check*, 153 F. Supp. at 1258. The Court directed Respondents to respond to both Petitioner's TRO application and his habeas petition in its order for response. *See* Doc. 9. So, the undersigned construes Petitioner's TRO application as a motion for a preliminary injunction. *See Davenport v. Pata*, No. CIV-20-358-C, 2021 WL 2371897, at *2 (W.D. Okla. Feb. 25, 2021), adopted, 2021 WL 2371346 (W.D. Okla. June 9, 2021)

[5]    Respondents refers to Pamela Bondi, Attorney General of the United States; Russell Holt, Chicago Field Office Director Immigration and Customs (ICE) Enforcement and Removal Operations (ERO); Joshua Johnson, Dallas Field Office Director ICE/ERO; Todd Lyons, Acting Director of ICE; and Kristi Noem, Secretary of the Department of Homeland Security (DHS), as Respondent Scarlet Grant is not a federal official. *See* Doc. 7 & Doc. 11, at 10.

Petitioner is a 24-year-old citizen of Uzbekistan who entered the country on April 18, 2023. Doc. 7, at 17. He "was threatened by the Uzbek government for his political beliefs." *Id.* He applied for asylum in May 2023. *Id.* And ICE issued him an employment authorization document. *Id.*[6]

Petitioner has been detained by Immigration & Customs Enforcement (ICE) since November 2025 after being pulled over "while driving his vehicle." *Id.* at 17-18. In December 2025, Petitioner applied for a bond redetermination hearing, but the Immigration Judge (IJ) determined the court lacked jurisdiction to hear Petitioner's request as he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(a). *Id.* at 18.[7] ICE has charged Petitioner as someone who "entered [the United States] without inspection" under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at 4; *see* § 1182(a)(6)(A)(i) ("An alien present in the

---

[6]    Petitioner was released from ICE's custody, but the parties do not supply information as to whether this was on his own recognizance or subject to conditions. Applicable regulations provide that a grant of employment authorization is "[s]ubject to the restrictions contained in" 8 U.S.C. §§ 1158(d) and 1226(a). 8 C.F.R. § 208.7(a)(1).

[7]    In *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the BIA held that those who entered the country without admission or parole are ineligible for a bond hearing and are detained under 8 U.S.C. § 1225(b)(2)(A). 29 I. & N. Dec. at 216. *Hurtado* is not binding on this Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

3

United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

## II.   Petitioner's claims.

Petitioner raises six grounds for relief:

Grounds One and Two: Violations of the Immigration & Nationality Act (INA) and relief as a member of the classes certified in *Maldonado-Bautista v. Noem,* 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) and *Mendoza Gutierrez v. Baltasar,* 2025 WL 2962908 (D. Colo. Oct. 17, 2025);

Ground Three: Violation of 8 U.S.C. § 1226(a) for unlawful denial of release on bond;

Ground Four: Violation of ICE's Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19 for unlawful denial of release on bond;

Ground Five: Violation of his Fifth Amendment right to due process; and

Ground Six: Violation of the Administrative Procedure Act (APA) – 5 U.S.C. § 706(2)(A).

Doc. 7, at 19-27. In short, he argues that mandatory detention under 8 U.S.C. § 1225(b)(2) does not apply to him as he is detained under § 1226(a), Respondents are violating the INA through his continued detention, and have violated his due process rights. *Id.*

Petitioner asks this Court to "declare that [his] re-detention without an individualized determination violates the Due Process Clause of the Fifth

Amendment," issue a writ ordering Respondents to release him from custody within three days, and issue an order prohibiting Respondents from transferring him from the district without the Court's approval. *Id.* at 29-30.[8]

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221,

---

[8]    In his TRO application, Petitioner largely seeks the same relief, but requests that the Court order Respondents to provide him with an individualized bond hearing within seven days rather than three. *See* Doc. 8, at 2. He also asks the Court to enjoin Respondents "from relocating [him] outside of the District of Oklahoma pending final resolution of [his] case" and "issuance of an order to show cause." *Id.* Petitioner's requests were rendered moot in the Court's order for response. *See* Doc. 9.

1232 (10th Cir. 2019). "Because the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held,'" there are "three types of specifically disfavored preliminary injunctions . . .: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005). "To determine whether an injunction is mandatory or prohibitory, [courts] look at the substance of the injunction and compare it to the status quo ante—i.e., the 'last uncontested period preceding the injunction.'" *Evans v. Fogarty*, 44 F. App'x. 924, 928 (10th Cir. 2002) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)). A mandatory injunction "compel[s] [the non-moving party] to do something it was not already doing during the last uncontested period preceding the injunction." *See Dominion Video,* 269 F.3d at 1155.

To succeed on his motion for injunctive relief, Petitioner "needs to prove four things: (1) that [he is] 'substantially likely to succeed on the merits,' (2) that [he will] 'suffer irreparable injury' if the court denies the injunction; (3) that [his] 'threatened injury' (without the injunction) outweighs the opposing party's under the injunction, and (4) that the injunction isn't adverse to the

6

public interest.'" *Mrs. Fields,* 941 F.3d at 1232. The third and fourth factors, which assess harm to the opposing party and weighing the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "When called on to resolve a dispute over a statute's meaning," the Court should "seek[] to afford the [statute's] terms their ordinary meaning at the time Congress adopted them" and to "exhaust all the textual and structural clues bearing on the meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (internal quotation marks omitted). This Court's "'sole function' is to apply the law as the Court finds it, . . . not defer to some conflicting reading the government might advance." *Id.* (internal citation omitted); *see also Oklahoma v. U.S. Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1222 n.11 (10th Cir. 2024) (stating that the court "must independently interpret the statutory phrase irrespective of the parties' positions"), *judgment vacated on other grounds*, 145 S. Ct. 2837 (2025).

## IV.   Discussion.

### A.   The Court has jurisdiction to consider the petition.

Respondents maintain Petitioner's argument is jurisdictionally barred. Doc. 11, at 20-23. The undersigned disagrees.

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for

judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides another bar to judicial review, specifically for "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" "[e]xcept as otherwise provided in this section." *Id.* § 1252(b)(9). Section 1252(b)(9) is a "jurisdiction-stripping 'zipper clause,'" which "channel[s] review of all 'decisions and actions leading up to or consequent upon final orders of deportation' in the courts of appeal, following issuance of an order of removal." *Mukantagara v. DHS*, 67 F.4th 1113, 1115 (10th Cir. 2023) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-85 (1999)).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Court reads § 1252(g) narrowly, *Reno*, 525 U.S. at 482, as it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Id.* Instead, it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.*

8

The Court has jurisdiction over the petition as Petitioner is only challenging the way Respondents are conducting his detention—the lack of a pre-deprivation bond hearing. *See Ferry v. Gonzales,* 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that § 1252(a)(5) does "not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention" and affirming district court's finding that it had jurisdiction to review a habeas petition challenging "DHS's continued detention [of petitioner] without bond or without providing a bond hearing").

Likewise, § 1252(b)(9) does not bar this Court's review. Petitioner does not ask the Court to review a removal order (which has not been issued), or Respondents' decision to detain him or seek his removal. And, by addressing the petition, the Court is not reviewing any part of Respondents' process for determining Petitioner's eligibility for removal. *See Jennings v. Rodriguez,* 583 U.S. 281, 294-95 (2018) (holding that § 1252(b)(9) "does not present a jurisdictional bar" when "detained aliens" "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not . . . challenging any part of the process by which their removability will be determined").

Finally, § 1252(g) does not bar this Court's review of Petitioner's detention. Respondents argue § 1252(g)'s language strips this Court of

9

jurisdiction to review any claim arising from the decision to commence proceedings against Petitioner—including the "basis" for that decision. Doc. 9, at 16. But the Supreme Court finds this interpretation "implausible" because "the mention of three discrete events along the road to deportation was [not] a shorthand way of referring to all claims arising from deportation proceedings." *Reno*, 525 U.S. at 482. And in *Jennings*, the Supreme Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." 583 U.S. at 294. Because Petitioner is only challenging his continued detention without a pre-deprivation bond  hearing and not the start of the removal proceeding itself, his claim falls outside the narrow jurisdictional limitations of § 1252(g). *See Tesara v. Wamsley,* 2025 WL 3288295, at *3 (W.D. Wash. Nov. 25, 2025) ("Petitioner's habeas petition does not seek review of the Government's decision to commence removal proceedings or to take an action to remove him from the United States, nor does he seek to challenge the removal process writ large. . . . Instead, he seeks judicial review of the procedure by which he was re-detained by an ICE officer without notice and a hearing before a neutral decisionmaker.").[9]

---

[9]    This Court, consistent with other district courts throughout the country, has dispensed with arguments by the Government that 8 U.S.C. § 1252(a)(5),

**B.    Petitioner is not entitled to declaratory relief based on the class actions he cites.**

Petitioner asserts that *Bautista*, 2025 WL 3678485, binds this Court because he appears to be a member of the certified "Bond Eligible Class." *See* Doc. 7, at 18-19. The Court finds, however, that *Bautista* has no impact on this Court's habeas decision.

Although that court's declaratory relief could impact Petitioner as a potential class member, the court's habeas corpus relief can only extend to class members located within the boundaries of the Central District of California. *See Bautista v. Santacruz*, 2025 WL 3713987, at *30 (C.D. Cal. Dec. 18, 2025) at *30 (The Court readily admits that federal courts are of limited jurisdiction. This Court's jurisdiction to grant habeas relief is limited to those within the judicial district." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004))).

---

(b)(9) and (g) deprive the Court of jurisdiction when a noncitizen challenges their detention under § 1225(b)(2)(a). *See Cortes v. Holt,* No. CIV-25-1176-SLP, 2026 WL 147435, at *2-3 (W.D. Okla. Jan. 20, 2026); *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026); *see also Hasan v. Crawford,* 800 F. Supp. 3d 641, 650 n.7 (E.D. Va. Sept. 19, 2025) ("Federal courts throughout the country have similarly found that these jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention." (collecting cases)).

"[I]n habeas challenges to present physical confinement," "jurisdiction lies in only one district: the district of confinement." *Rumsfeld*, 542 U.S. at 435, 443; *see also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld*). Petitioner filed his Petition while detained in the territorial jurisdiction of the Western District of Oklahoma, and there is no evidence he was ever confined in the Central District of California. *See* Doc. 7, at 2, 7. So at no point was Petitioner—or his custodian at Cimarron Correctional Facility—subject to that court's jurisdiction. Without jurisdiction, no court in California can grant Petitioner habeas corpus relief.

Likewise, Petitioner cites his potential membership in the *Gutierrez* class action, where the District of Colorado granted declaratory relief to class members in the form of a bond hearing, as a basis for declaratory relief. Doc. 7, at 20-21. Because he is subject to the jurisdiction of the Aurora Immigration Court, he maintains this relief applies. *Id.* at 22-23. But Petitioner concedes venue properly lies in this District, *see id.* at 8, and as explained above, the Court can only grant habeas relief within this jurisdiction. So, the Court need not address this issue further. *See, e.g.*, *Rachid v. Olson*, 2026 WL 228115, at *2 (S.D. Ind. Jan. 28, 2026) ("[T]he Court finds that *Bautista* and the declaratory judgment issued in that case are not binding here, so the Court's analysis must continue on the merits.").

12

The Court should therefore deny Petitioner's request for habeas corpus relief based on his class membership.[10]

### C.    Section 1226 governs Petitioner's detention.

Petitioner next asserts that Respondents violated the INA by detaining him under the mandatory detention provision in § 1225(b)(2). Doc. 7, at 22-23. He argues this provision does not apply to him because he had previously entered and had been residing in the United States "prior to being apprehended and placed in removal proceedings by Respondents." *Id.* at 22. So, as someone who is not a recent arrival seeking inspection and admission into the United States, Petitioner asserts his detention is governed—not by § 1225(b)(2)—but by § 1226(a). *Id.* at 22-23.

The Court's inquiry "begins with the statutory text" and ends there if it "is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

_____

[10]    Respondents urge the Court to dismiss Counts I and II of the petition for "impermissible claim splitting" as Petitioner's membership in the *Bautista* and *Gutierrez* classes means he is asserting "three effectively identical suits against the Respondents, based on the same facts and seeking the same relief." Doc. 11, at 35-36. The undersigned is not convinced that the declaratory judgment issued in *Bautisa* is binding on this Court as the Central District of California recognized it could not "order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside [the Central District of California]." 2025 WL 3713987, at *30. Still the Court need not resolve that question for these purposes because it independently determines that Petitioner's detention violates the INA.

"If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "[O]ftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). "So when deciding whether the language is plain, [the Court] must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Brown & Williamson*, 529 U.S. at 133).

> Section 1225(b)(2)(a) provides that:
>
> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of [Title 8].

8 U.S.C. § 1225(b)(2)(a). This section "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings*, 583 U.S. at 289; *see also Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("[Section] 1225 governs removal proceedings for 'arriving aliens.'").

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the

arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)).[11] "'Except as provided in [Section 1226(c)],' the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.* (quoting § 1226(a)(1)-(2)). Courts have described § 1226(a) as a "catchall" provision which "capture[s] noncitizens who fall outside of the specified categories" of § 1225. *Pizarro Reyes*, 2025 WL 2609425, at \*5.

The resolution of Petitioner's claim turns, in part, on whether he is a noncitizen "seeking admission" as that phrase is used in § 1225, or an arrested and detained noncitizen who—having never sought to obtain lawful status—falls under § 1226 and may be released on conditional parole or bond pending the outcome of his removal proceeding.

Under ICE's new internal guidance:

> An 'applicant for admission' is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. Effective immediately, it [sic] the position of DHS that such aliens are

---

[11] The *Jennings* Court acknowledged § 1226 as the default rule for detaining and removing noncitizens "already present" in the country. *Jennings*, 583 U.S. at 303. The Court did not, however, specify whether the "already present" rule applied only to persons who had once entered the country lawfully—as Respondents argue—or to all noncitizens present in the country whether lawfully admitted—as Petitioner argues. Because *Jennings* is not definitive, the Court continues its analysis.

subject to detention under [§ 1225(b)(2)(A)] and may not be released from ICE custody except by [§ 1182] parole. . . . For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated. The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [§ 1226(a)] during removal proceed[ings] are aliens admitted to the United States . . . with the exception of those subject to mandatory detention under [§ 1226(c)].

*Savane v. Francis,* 801 F. Supp. 3d 483, 490 (S.D.N.Y. 2025) (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*).

The Court begins with § 1225's title. "[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (internal quotation marks omitted). And "a title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Id.* (internal quotation marks and alteration omitted).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" to describe noncitizens clarifies that the section governs the entrance of noncitizens to the United States. Additionally, its subheadings all relate to "arriving" noncitizens. *See, e.g.*, § 1225(b)(1) (labeled "Inspection of aliens arriving in the United States and certain other

16

aliens who have not been admitted or paroled" and describing their immediate removal "without further hearing or review" unless there is a claim for asylum or a fear of persecution); § 1225(b)(2) (labeled "Inspection of other aliens" and describing detention of noncitizens "seeking admission"); § 1225(d) (labeled "Authority Relating to Inspections" and describing the powers of immigration officers to search and detain vessels and "arriving aliens"). And finally, it is located between two other sections dealing with the arrival of noncitizens: § 1224, "Designation of ports of entry for aliens arriving by aircraft," and § 1225a, "Preinspection at foreign airports."

Next, the Court looks at the INA's statutory definitions. *See BP Am. Prod. Co. v. Haaland*, 87 F.4th 1226, 1235 (10th Cir. 2023) (analyzing statute by leaning "on related statutory definitions in the Royalty Management Act."). Section 1225(a)(1) defines an "applicant[] for admission" as:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]

8 U.S.C. § 1225(a)(1).

Section 1101(13)(A) of United States Code Chapter 8 provides that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful

17

entry of the alien into the United States after inspection and authorization by an immigration officer."

Respondents contend that Petitioner and other noncitizens who have entered the country without inspection are applicants for admission under § 1225(a)(1), whether or not they are passively residing in the country. Doc. 11, at 28-29. But while Petitioner may qualify as an "applicant for admission," that alone does not make Petitioner "an alien seeking admission." *See Escarcega v. Olson,* No. CIV-25-1129-J, 2025 WL 3243438, at *2 (W.D. Okla. Nov. 20, 2025) ("[I]f all 'applicants for admission' are also 'seeking admission,' then § 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that 'make[] any part [of the statute] superfluous.'" (quoting *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996)).[12]

Section 1225(b)(2)(A) provides that:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

---

[12]    This Court has rejected the argument that an "applicant for admission" is synonymous with one "seeking admission," relying, in part, on the Seventh Circuit's decision in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 2025 WL 3552514 (7th Cir. Dec. 11, 2025). *See Cortes*, 2026 WL 147435, at *5-6 ("The mere presence of Petitioner in the country does not mean he is "seeking admission. . . . Accordingly, the Court does not find that Petitioner's circumstances fall under the plain language of § 1225(b)(2).").

> beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Courts interpreting this narrowing language have thus concluded that "a noncitizen who has been present in the country for multiple years without obtaining any form of citizenship is not 'seeking admission' under § 1225(b)(2)(a)." *Cortes*, 2026 WL 147435, at *5; *see also Jennings*, 583 U.S. at 297 ("[Section] 1225(b) applies primarily to aliens *seeking entry into the United States* ('applicants for admission' in the language of the statute)." (emphasis added)).

As noted, the INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Seeking," however, is undefined. "When a term is undefined in a statute, [the Court] must look to its ordinary meaning." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024). "'Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term.'" *Id.* (quoting *In re Mallo*, 774 F.3d 1313, 1321 (10th Cir. 2014)).

"Seeking" is the present participle of "seek," which Merriam-Webster defines as "to resort to," "go to," "to go in search of," "look for," "to try and discover," "to ask for," "request," "to try to acquire or gain," "aim at," "to make

19

an attempt," or "try." *Seek,* Merriam-Webster, https://www.merriam-webster.com/dictionary/seeking#dictionary-entry-1 (last visited Mar. 11, 2026). So the use of "seeking" "denotes an active and present effort." *Valverde v. Olson,* 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025); *see also Caballero,* 2025 WL 2977650, at *6 ("The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use [of] the present participle in § 1225(b)(2)(A) 'implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" (quoting *Lopez-Campos v. Raycraft,* 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025))

As a result, a noncitizen seeking admission is a person who, at the time of his or her detention, is presently pursuing lawful admission into the United States. *See Hernandez v. Baltazar,* 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025) ("Courts have found that '[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission" under § 1225(b)(2)(A)." (quoting *Lopez-Campos,* 797 F. Supp. 3d at 781)).

Section 1225's placement in the overall statutory scheme reinforces this conclusion. *See, e.g., King,* 576 U.S. at 486 (holding that courts are meant "to construe statutes, not isolated provisions" (internal quotation marks omitted)).

20

Congress separated the removal of arriving aliens from its more general section for "Apprehension and detention of aliens" in § 1226. This placement implies Congress's enactment of § 1225 was for a specific, limited purpose, which the Supreme Court underscored in *Jennings. See id.* 583 U.S. at 289 (noting that § 1225(b)(1) and (b)(2) "authorize[] the Government to detain certain aliens seeking admission into the country" and that § 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings"); *see also Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected entry into the United States and one who has never entered runs throughout immigration law. . . . But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Congress's recent amendment of § 1226 through the Laken Riley Act (LRA) also supports the Court's interpretation. This amendment mandates that ICE "shall take into custody" any noncitizen who is both inadmissible under § 1182(a)(6)(A)(i) ("present in the United States without being admitted or paroled") and is "charged with, [] arrested for, [] convicted of, [or] admits having committed" certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

21

"Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well. . . . That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)). As this interpretation "would largely nullify a statute Congress [recently] enacted," the Court should reject it. *Id.* (internal quotation marks omitted); *see also Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").[13]

---

[13]    In *Castañon-Nava,* the Seventh Circuit concluded Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of 'applicants for admission'] but elected not to do so." 161 F.4th 1048, 1061. Judges in this District have found the Seventh Circuit's analysis to be "persuasive." *Maldonado v. Noem,* No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez,* 2025 WL 3709021, at *2; *see also Toledo Santos v. Grant,* No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026) (noting this Court's decision to apply § 1226 to a similarly

Respondents also argue that Petitioner is "seeking admission" to the United States, because he is an applicant for admission who is also seeking asylum. Doc. 11, at 19. As a result, Respondents maintain he is subject to the "mandatory" detention provision of § 1225(b)(2)(A). The Court acknowledges that Petitioner is positioned somewhat differently from many petitioners in other cases because he has an active asylum application. Nonetheless, because of the title of § 1225, which reads "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and limiting language within a sub-provision of § 1225 regarding detention of noncitizens who cannot show they have been in the United States for more than two years, nearly identical arguments have been rejected by judges in this District and others.[14]

---

situated petitioner "is in accord" with the Seventh Circuit). In contrast, the Fifth Circuit recently applied § 1225 to a similar habeas challenge. *Buenrostro-Mendez v. Bondi,* No. 25-20496, --- F.4th ---, 2026 WL 323330, at *1, *4-9 (5th Cir. Feb. 6, 2026). For the reasons discussed, the undersigned respectfully disagrees with the Fifth Circuit's decision, which is of course, not binding on this Court. The undersigned instead agrees with this Court, Chief Judge DeGiusti, Judge Palk, Judge Russell, Judge Heaton, and the overwhelming number of other courts that recently addressed this question in many well-reasoned and thorough decisions.

14      *See, e.g.*, *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li v. Grant,* No. CIV-25-

So when ICE arrested and detained him, he was not subject to mandatory detention under § 1225(b)(2)(A). Instead, Petitioner is subject to § 1226, and was "entitled to a prompt bond hearing before an immigration judge pursuant to § 1226(a)." *Cortes*, 2026 WL 147435, at *7; *see also Caballero,* 2025 WL 2977650, at *8 ("The Court joins the numerous courts across the country that have held that [noncitizens not apprehended at the border, who have been present in the United States for many years without lawful status] are subject to the discretionary detention framework of § 1226(a).").

> **D.    The Court should grant Petitioner's request for a preliminary injunction.**

---

1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum"); *Hernandez v. Baltazar*, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025) (the title of § 1225 indicates that the statute governs "arriving" noncitizens, not those present in the United States already and that "§ 1225(b)(1)(A)(iii)(II)'s language explicitly limit[s] mandatory detention to noncitizens who have been in the U.S. for less than two years" suggests that § 1225 is not meant to apply to noncitizens who have been in the U.S. for significantly longer) (collecting cases); *cf. Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (the Supreme Court has "long considered" that the title of a statute and the heading of a section are tools available for resolution of a doubt about the meaning of a statute). The Court finds the reasoning set forth in these cases compelling and agrees that § 1225 applies to arriving noncitizens seeking admission, while § 1226 applies to noncitizens like Petitioner who are already present in the United States.

24

Petitioner "does not seek relief in the form of another bond hearing" and instead "requests that the Court order his release from custody, as his continued confinement, following proceedings that failed to comport with due process, cannot be cured by further administrative review." Doc. 7, at 6. He maintains that "[w]here detention has been maintained in violation of constitutional requirements, the appropriate remedy is release, not the repetition of procedures that have already proven inadequate." *Id.*

In his TRO application, Petitioner maintains that he had "a protected liberty interest in his freedom from physical custody" due to his conditional release. Doc. 8, at 12. He states that "Respondents violated [his] due process rights when they detained him without notice and without a custody hearing before a neutral arbiter." *Id.* at 17.

"'In determining the status quo for preliminary injunctions, this [C]ourt looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights.'" *Schrier,* 427 F.3d at 1260 (quoting *Dominion Video Satellite, Inc.,* 269F.3d at 1155. The status quo is "the last peaceable uncontested status existing between the parties before the dispute developed." *Id.* (internal quotation marks and citation omitted).

The undersigned determines the last uncontested period before the dispute developed to be "before [Petitioner] was arrested and was still on

25

parole." *Garcia v. Andrews,* 2025 WL 2420068, at \*8 (E.D. Cal. Aug. 21, 2025). So, Petitioner does not seek a disfavored mandatory injunction.

### 1. Petitioner establishes a likelihood of success on the merits in that a pre-deprivation hearing was required.

The undersigned finds that Petitioner establishes a likelihood of success on the merits because his due process rights were violated when Respondents re-detained him.

"ICE may release a person on parole." *Id.* at \*5. "An immigrant who has been detained at the border, may be paroled for humanitarian reasons or due to it providing a significant public benefit (8 U.S.C. § 1182(d)(5)(A)) or he may be conditionally released (8 U.S.C. § 1226(a))." *Id.* "To be released on conditional parole/own recognizance, there must be a finding that the immigrant does not pose a risk of flight or danger to the community." *Id.; Pinchi v. Noem,* 792 F. Supp. 3d 1025 (N.D. Cal. 2025) ("The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'" (quoting 8 C.F.R. § 1236.1(c)(8))).

"Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" *Iza v. Arnott*, 2026 WL 67152, at

*3 (W.D. Mo. Jan. 8, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *see also Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court considers what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. "Procedural due process imposes constraints on government decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).

In examining the necessary process, the Court turns to the three factors set forth in *Mathews*: (1) "the private interest that will be affected by the official

27

action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Petitioner maintains that these factors weigh in favor of his release. Doc. 8, at 12-17. And the undersigned agrees.

The Court finds that Petitioner has a significant private interest in remaining free from detention after having been released from immigration custody. Respondents do not challenge Petitioner's assertions that he "resided in the United States since October 2022, [was] issued a Notice to Appear, and allowed [] to reside in the country pending removal proceedings. . . . [f]or nearly three years, [he] lived openly in the interior with the knowledge and acquiescence of DHS." *Id.* at 25. During this time his interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Petitioner raises the lack of notice and his detention "without a custody

28

hearing before a neutral arbiter." Doc. 8, at 17. Given the lack of notice and bond or custody hearing provided to Petitioner, "'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi,* 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1047)). The Court finds there is a substantial likelihood that Petitioner can show that the erroneous deprivation here is considerable, particularly where ICE has previously released Petitioner and has not shown a change in circumstances or otherwise explained why redetention is necessary. *Gualpa-Lumbi v. Hoover,* 2026 WL 452351, at \*11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025. . . . [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the Court finds there is a substantial likelihood that Petitioner can show that the third *Mathews* factor favors him as well. *See* 424 U.S. at 335. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. While this Court recognizes that the government has an interest in enforcing immigration laws," "requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration

laws; it merely ensures its enforcement tactics comport with due process." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026); *Sahil,* 2026 WL 560216, at *3.  And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g., Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation. DHA has the authority to revoke an alien's parole 'at any time' on a discretionary, *but not unlimited,* basis.") (emphasis added) (quoting *Mohammed H. v. Trump,* 2025 WL 1692739, at *5 (D. Minn. June 17, 2025)). Especially given "that the Government[] released [Petitioner] for several years weighs against any potential argument by the Government regarding this third factor." *Gualpa-Lumbi,* 2026 WL 452351, at *11. And, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest, and that due process requires a pre-deprivation hearing, the Court finds that

Petitioner has established a substantial likelihood of success on the merits of his procedural due process claim. This alone warrants relief, without needing to assess Petitioner's substantive due process claim or his INA claim.

### 2.    Petitioner can show irreparable harm.

The irreparable harm factor requires the moving party to show "that irreparable injury is *likely* in the absence of an injunction," not a mere "possibility of irreparable harm." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). This factor also leans in Petitioner's favor as it is well-established that "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (internal quotation marks and citations omitted); *see, e.g.*, *Sahil v. Anda-Ybarra,* 2026 WL 560216, at *4 (D.N.M. Feb. 27, 2026) ("Having found a substantial likelihood of success on the merits of Petitioner's due process claim, 'no further showing of irreparable injury' is necessary.") (quoting *Free the Nipple-Fort Collins,* 916 F.3d 792, 805 (10th Cir. 2019)).

### 3.    The balance of equities and public hardship weigh in Petitioner's favor.

"[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"

31

*Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell,* 480 U.S. 531, 531, 542 (1987)). "In exercising their sound discretion, [federal courts] should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (citation omitted). The undersigned finds the balance of equities and public interest weigh in Petitioner's favor.

The public has a "substantial [] interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Gamez Lira v. Noem*, 2025 WL 2581710, at *4 (D.N.M. Sept. 5, 2025) (citation omitted). And "[a]ny burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to the harm that Petitioner suffers due to his continued detention." *Sahil,* 2026 WL 560216, at *4.

### E.    Petitioner's APA claim does not lie within habeas.

In Count Six, Petitioner alleges Respondents violated the APA "[b]y detaining [him] without consideration of [his] individualized facts and circumstances." Doc. 7, at 29.

Because Petitioner's claims for relief "'necessarily imply the invalidity' of [his] confinement," his claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *see also id.* at 674 ("[G]iven 5 U.S.C. § 704, which states that claims

32

under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (Kavanaugh, J. concurring); *Soberanes,* 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas." (citing *Zadvydas,* 533 U.S. at 687). The Court should deny Petitioner's request for relief under the APA.

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas application, Doc. 7, and **grant in part** Petitioner's TRO application, Doc. 8. Specifically, the undersigned recommends the Court order Respondents to immediately release Petitioner from their custody. The undersigned further recommends the Court enjoin Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Finally, the undersigned recommends the Court waive the requirement to post bond.[15]

---

[15]    "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined on restrained." Fed. R. Civ. P. 65(c). "However, the Court has discretion to require only a nominal bond, or no bond at all, in a case where issues of overriding public concern or important federal rights are involved." *Ent. Merchants Ass'n v. Henry*, No. CIV-06-675 C, 2006 WL 2927884, at *4 (W.D. Okla. Oct. 11, 2006).

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by March 18, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[16] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 11th day of March, 2026.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[16]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").